# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kean P.,

Petitioner,

v.

Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; David Venturella, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Deputy Field Office Director of St. Paul-Minneapolis Office, U.S. Immigration and Customs Enforcement*; John Doe, *in his official capacity as Sherburne County Facility*,

Respondents.

File No. 26-CV-2951 (JMB/ECW)

**ORDER**

Mai Neng Moua, Mai N. Moua Law Office, Minneapolis, MN, for Petitioner Kean P.

David W. Fuller, United States Attorney's Office, Minneapolis, MN; and David R. Hackworthy, Department of Homeland Security, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood.

1

This matter is before the Court on Petitioner Kean P.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood as Respondents. For the reasons explained below, the Court grants the Petition.

## FINDINGS OF FACT

### A. Background

1. Kean P. is a 55-year-old ethnic Khmer and citizen of Cambodia. (Pet. ¶¶ 1, 15, 19; Doc. No. 6 at 1.)

2. Kean P. arrived in the United States as a refugee in November 1985, when he was fourteen years old. (Pet. ¶¶ 6, 15; Doc. No. 6 at 1.)

3. In November 1986, Kean P.'s status was changed to lawful permanent resident. (Doc. No. 6 at 1.)

4. Kean P. has made his home in the United States for the last 41 years. (Pet. ¶ 6.)

5. Because Kean P. arrived in the United States at a young age, he does not have meaningful ties to Cambodia—he does not speak Khmer fluently, and he has no family, property, or employment ties to Cambodia. (Pet. ¶ 19.)

6. Kean P. is married to a U.S. citizen, has three U.S. citizen children, and U.S. citizen grandchildren. (*Id.* ¶¶ 6, 16.)

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

7.      Kean P. has maintained steady employment throughout his adult life and is an active member of his faith community.  (*Id.* ¶¶ 17, 18.)

**B.      Immigration History**

8.      In June 1998, Kean P. was convicted of First Degree Aggravated Robbery in Ramsey County District Court, *State v. Kean P.*, No. 62-K6-98-633 (Minn. Dist. Ct.). (Doc. No. 8 ¶ 6.)

9.      In August 1998, Kean P. was issued a Notice to Appear and in March 2000, he was ordered removed by an Immigration Judge.  (Pet. ¶ 20.)

10.      Kean P. was detained for a period following the issuance of the removal order but, because Immigration and Naturalization Service (DHS's predecessor agency) was unable to effectuate the removal order, he was ordered released on an order of supervision. (*Id.* ¶ 21.)

11.      For almost three decades, Kean P. has complied with all terms of his order of supervision and has appeared at all immigration-related check-ins.  (*Id.* ¶ 22.)

12.      On June 12, 2026, Kean P. attended a regular check-in with ICE at Fort Snelling, Minnesota.  (*Id.* ¶ 35.)

13.      At the check-in, around 9:10 a.m., ICE arrested and detained Kean P.  (*Id.* ¶ 35; Doc. No. 8-1 at 2.)

14.      Kean P. was not served with a notice of revocation of his order of release or otherwise provided any reason for the revocation of his release at any time prior to his

current detention.[2]  (Pet. ¶ 36.)

15.    Kean P. remains detained at the Sherburne County Jail.  (Pet. ¶ 6.)

**C.    *Chhoeun v. Quinonez* Settlement Agreement**

16.    On April 27, 2026, the Honorable John W. Holcomb of the U.S. District Court for the Central District of California approved a Settlement Agreement of a class action brought by Cambodian nationals who had received final orders of removal but had been released on orders of supervision and had not violated any laws or terms of their supervision.  *Chhoeun v. Quinonez*, No. 8:17-CV-1898 (JWH/GJSx) (C.D. Cal. Apr. 27, 2026.)  In the lawsuit, the Cambodian nationals alleged that DHS had violated their constitutional rights by re-detaining them without warning and sought an order requiring ICE to provide the Cambodian nationals notice before re-detaining them for purposes of removal.  *See generally Chhoeun*, No. 8:17-CV-1898 (C.D. Cal.).

17.    There is no dispute that Kean P. is a member of the *Chhoeun* settlement class. (Doc. No. 7 at 4 ("Federal Respondents do not dispute that Petitioner is a class member[.]").)

18.    The *Chhoeun* Settlement Agreement provides that its purpose is to ensure

---

[2] Respondents filed a Notice of Revocation of Release form in support of their contention that Kean P. was provided notice that his release had been revoked under 8 C.F.R. § 241.13(i) on grounds that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" because ICE is seeking travel documents for his return to Cambodia.  (Doc. No. 8-2 at 1–2.)  However, this document was signed by an ICE Assistant Field Office Director at 11:07 a.m. CT—approximately two hours after ICE arrested Kean P.  (*Id.* at 2.)  To make matters more confusing, the document also states that ICE officers served Kean P. with the notice of revocation at 10:00 a.m.—approximately one hour after ICE arrested Kean P. but one hour *before* the notice was signed by an authorized official.  (*See id.*)

that class members receive at least fourteen days' notice from ICE prior to arrest and re-detention, as follows:

> The Court instituted a permanent injunction providing certain protections to members of the certified class by requiring a notice of pending removal at least fourteen days before the noncitizen is re-detained for removal.  This Agreement is intended to replace the permanent injunction with an immediate notice to members of the Settlement Class . . . that they are subject to removal and can seek to reopen their removal proceedings if their circumstances or the law underlying their removal order has changed, or other grounds for reopening exist.  The intend of the Agreement is to provide more timely and effective notice to address Petitioners' claims.

(Doc. No. 1-4 at 4 ¶ I (internal citation omitted).)

19.    The Settlement Agreement provides that, by no later than six months after the Court's approval of the Settlement Agreement, ICE will provide a one-time "informational notice" to each class member, which will inform them that they "are subject to a final order of removal," that "ICE may take action to detain you and deport you to Cambodia at a future time," and that class members may have avenues for legal relief.  (*Id.* at 6, 8, 21, 24.)  Such notice will be valid for a period of three years.  (*Id.* at 10.)

**D.    This Action**

20.    On June 14, 2026, Kean P. filed his Petition.  (*See generally* Pet.)

21.    On June 15, 2026, the Court entered an order requiring Respondents to file their responses to the Petition by or before 11:00 a.m. on June 17, 2026.  (Doc. No. 3.)

22.    Respondents timely filed their response to the Petition.  (Doc. No. 7.)

**DISCUSSION**

In his Petition, Kean P. argues that his detention is unlawful in several ways, namely

5

that his re-detention violates (1) the *Chhoeun v. Quinonez* Settlement Agreement and court order; (2) the Due Process Clause of the Fifth Amendment; (3) the Immigration and Nationality Act and its implementing regulations; (4) the Administrative Procedure Act; and (5) the *Accardi* doctrine. Kean P. seeks immediate release. For their part, the Federal Respondents argue that they did not violate the *Chhoeun* Settlement Agreement, that Kean P. fails to state a claim for any violation of his procedural or substantive due process rights, and that Respondents' re-detention of Kean P. did not run afoul of any administrative rule or regulation. Because the re-detention violates the Settlement Agreement, the Court grants the Petition.

### A.    Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

6

B.        Violation of *Chhoeun v. Quinonez* Settlement Agreement

In April 2020, the Court in *Chhoeun*, issued a permanent injunction that "permanently restrained and enjoined [ICE] from re-detaining for removal any Class Member . . . *unless* ICE first serves written notice . . . on the Class Member at least 14 days before re-detention," and orders that "[n]otice *must* be served on each Class Member at least 14 days before re-detention." *Chhoeun*, No. 8:17-CV-1898, Doc. No. 336 at 2 (Apr. 27, 2020) (emphasis added).  Later, on April 27, 2025, the Court approved the parties' Settlement Agreement, which was "intended to replace the permanent injunction" and require ICE to provide *all* Class Members with a single one-time notice rather than ICE being required to provide individualized notices before re-detention. (Doc. No. 1-4 at 4 ¶ I (internal citation omitted).)   The Settlement Agreement requires ICE to complete its disbursement of such notices within six months of the Court's approval of the Settlement Agreement.  (*Id.* at 6 ¶ III.A.1.)  It is undisputed that Kean P. is a *Chhoeun* class member and that Respondents provided no notice that he would be re-detained prior to his June 12, 2026 arrest and re-detention.  (Doc. No. 1 at 13.)

Respondents do not dispute that they did not follow the terms of the Settlement Agreement.  Instead, Respondents argue only that "the requirements to mail Petitioner certain documents and notice are not due until six months of the Effective Date of the Agreement," and that "[n]o violation has therefore occurred in detaining Petitioner until the six-month deadline has passed."  (Doc. No. 7 at 4.)   The Court cannot adopt Respondents' contorted interpretation of the Settlement Agreement.   Contrary to Respondents' argument, the Settlement Agreement does not contain a loophole allowing

7

ICE to re-detain *Chhoeun* class members without notice or to otherwise freely violate the terms of the Settlement Agreement through October 27, 2026.  Nor does the Court's order approving the Settlement Agreement include any language permitting ICE to violate the terms of the Settlement Agreement for the six-month period of time after the Court's order. Instead, Judge Holcomb's permanent injunction mandated that ICE not re-detain any class member unless and until the target class member had received fourteen days' notice.  The Settlement Agreement expressly is meant to "replace" the permanent injunction with a more streamlined procedure for giving notice, which procedure is meant to be completed within six months.  It is absurd to interpret the Settlement Agreement as allowing ICE to detain class members without notice.

Here, Kean P. is a *Chhoeun* class member.  On June 12, 2026, ICE detained Kean P. before he ever received the one-time notice of potential re-detention from ICE as contemplated by the Settlement Agreement or any individualized notice from ICE.  In fact, the record here shows that Kean P. was notified of the revocation of his release approximately one hour *after* his arrest, at the earliest.  (*See* Doc. No. 8-2.)  That being the case, Respondents' detention of Kean P. is plainly in violation of the *Chhoeun* Settlement Agreement and order and, therefore, unlawful.[3]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

---

[3] Because the Court grants the Petition based on Respondents' violation of the *Chhoeun* Settlement Agreement and Order, the Court need not address the additional grounds for

1.  Respondents are ORDERED to release Petitioner Kean P. <u>immediately</u> in Minnesota and in any event no later than <u>4:00 p.m. CT on June 19, 2026</u>, subject to and in accordance with the conditions in Kean P.'s pre-existing Order of Release on Recognizance.

2.  On or before <u>11:00 a.m. CT on June 22, 2026</u>, counsel for Respondents shall file a letter affirming that they have released Petitioner Kean P.

3.  On or before <u>11:00 a.m. CT on June 22, 2026</u>, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation).  Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589.  If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property."  If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4.  Petitioner Kean P. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

---

relief sought by Kean P.  However, after reviewing the record, the Court is concerned that Respondents did not comply with their own regulations—namely 8 C.F.R. § 241.13(i)—when revoking Kean P.'s release.  For one thing, Respondents did not provide Kean P. notice that his release had been revoked until *after* his arrest.  Second, the record does not show that Respondents made any reasoned determination regarding the likelihood of Kean P.'s removal to Cambodia, and the record contains no evidence that in making this determination, Respondents considered the factors as required by 8 C.F.R. § 241.13(f). *See Faysal N. v. Noem*, __ F. Supp. 3d __, __, No. 25-CV-4641 (JMB/DLM), 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026) (granting petition of re-detained non-citizen whose release had been revoked without any apparent reasoned determination).

5.      To the extent Petitioner Kean P. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  June 18, 2026                                          /s/ *Jeffrey M. Bryan*
                                                                          Judge Jeffrey M. Bryan
                                                                          United States District Court